Opinion of the Court.
SCOTT sold to Samuel M’Millen merchandize to the amount of about $18,000, and received from him several obligations, payable at different periods. At the time of the purchase, M’Millen resided in Cynthiana in this state, and afterwards removed, with the merchandize, to Kaskaskia. But, prior to his departure from this state, M’Millen conveyed, by several deeds and bills of sale, his lands, slaves, &c. not carried with him, to his brother, Kennedy M’Millén ; and he left with Lewis Day, one of his clerks, and his brother Kennedy, the collection of debts due him.
Part of the sale money for the merchandize having become payable, and possessing no means of coercing payment by an action at law, Scott exhibited his bill in chancery, in the Harrison circuit court, against Samuel M’Millen, his brother Kennedy, and Day, to set aside the deeds and bills of sale from Samuel to Kennedy, which are alleged to have been fraudulently exe *303 cuted, to defeat the creditors of Samuel from the collection of their just demands, and to attach in their hands, respectively, the effects and money appertaining to Samuel, and to enjoin and restrain them from conveying the lands or paying over the effects, &c. find for general relief, &c. An injunction was accordingly granted.
Statement of the case.
Samuel M’Millen afterwards returned to this state, and Scott, whilst his suit in chancery was pending, commenced actions at law against him on the obligations.
Samuel M’Millen answered the bill; and, on his motion, the court, at the March term 1818, dissolved the injunction which had been granted Scott. At the same term, on a motion made by M’Millen for that purpose, the court made an order compelling Scott to elects either to proceed at law or in chancery, to establish his demand against M’Millen; but gave him permission, if he should elect to proceed at law, still to pursue his suit in chancery, to show that the deeds to Kennedy M’Millen were fraudulent, &c.
Scott accordingly elected to proceed both in chancery and at law, as directed by the court; and at the same term recovered judgments at law, and sued out executions thereon, and delivered them into the hands of the sheriff; but nothing was made thereunder.
The injunction which had been dissolved, was afterwards, by an order of a judge of this court, reinstated. But, before the injunction was reinstated, Kennedy M’Millen re-conveyed to Samuel, all the estate alleged to have been fraudulently conveyed to him, and received back the notes which he had given Samuel for the property. Samuel M’Millen, at the same time, executed to other creditors deeds of mortgage on the same property; and those creditors commenced suits in chancery, to foreclose the equity of redemption.
Scott then amended his bill, making the creditors to whom the mortgages were executed, parties; alleging that some of their demands were unjust, and insisting that as those mortgages were given whilst his suit was pending, the property should be subjected to the payment of his demand, &c.
All the defendants answered the bill. The creditors to whom the property was mortgaged, allege, that their demands, which the mortgages were intended to *304 secure, are just, and existed prior to the conveyances from Samuel to Kennedy M’Millen ; and insist, that having equal equity with Scott, they ought not to be defeated of their legal advantage, &c.
Statement of the case.
Samuel M’Millen, by his answer, denies that the conveyance was made by him to Kennedy, to defraud his creditors; but alleges, that being about to remove the merchandize which he purchased of Scott, without the state, he executed the deeds of conveyance, for the purpose of preventing a sacrifice of his property in his absence.
Kennedy M’Millen also denies the conveyance to him to have been made with a fraudulent intent; but alleges that his brother being about to leave the state, he made the purchase and gave his obligations for payment, and admits it to have been understood, that if his brother should again return to the state to live, the contract was to be cancelled.
On a final hearing, the court decreed the deeds of conveyance from Samuel to Kennedy M’Millen, to be fraudulent, and subjected them to the payment of Scott’s costs; but also decreed the demands for which the mortgages were given to the other defendants, to be just, and their liens, created by the mortgages, to be bona fide; and the property having been exhausted by sales decreed under those liens, the bill was dismissed, as to those defendants.
That all the defendants claiming to be creditors of Samuel M’Millen, were in fact creditors, as well as Scott, when the deeds were executed by Samuel M’Millen to his brother, and that those deeds were made with intent to hinder and delay the creditors of Samuel in the collection of their just demands, cannot be seriously doubted. The fraudulent intent with which those deeds were executed, is incontestably established, and the evidence proves satisfactorily the demands of eacht creditor. It was, therefore, evidently correct, for the court below to pronounce those deeds fraudulent, if the question of fraud was properly presented for determination. Generally speaking, creditors must show themselves to be such, by obtaining judgment at law, before they will be allowed to apply to a court of chancery to investigate any fraud alleged to have been committed by their debtor; in alienating his property—1 *305 Vernon 398, 3 Atk. 200, Roberts on Frauds 37, note p.
The general rule is, that where the complainants demand is merely legal, and his resort to equity is for the purpose of setting aside fraudelent conveyances of his debtor's property, he must, before filing his bill obtain a judgment at law.
But this rule does not apply, in this country, to cases where the debtor resides or has removed out of the commonwealth, so that no judgment can be obtained against him in all such cases, resort may be had to chancery in the first instance.
*305 The necessity of thus first obtaining judgment at law, before application is made to a court of chancery, does not, however, arise from the want of jurisdiction in the court of chancery to investigate fraud; but it results from the circumstance of the demand which constitutes the creditor, being cognizable at law, and the necessity of that demand being established by the determination of a court, acting within its legitimate sphere; and whenever the demand is so established, the court of chancery, acting within the acknowledge ed limits of its jurisdiction, will search out the fraud, and dear away all obstructions to the effectual execution of the judgment at law.
1. Notwithstanding, however, it may, in the general, be necessary for the creditor to establish his demand at law, before he applies to a court of chancery, sit cannot be admitted to be indispensable in every case. Cases may occur, and the present case was of that character when Scott’s bill was died, where, from the absence of the debtor from the country, the creditor would not be enabled to establish his demand at law. At common law, the creditor, in such a case, might perhaps establish his demand at law, by proceeding to outlaw the defendant; but in this country, after a return of "no inhabitant” on the writ, the suit is, directed to abate, and after an abatement there can be no proceedings to outlawry. Possessing, therefore, no means of establishing his demand at law, it would seem the creditor ought, without first commencing an action at law, to be allowed to apply to a court of equity for relief. It is not unusual for courts of equity to entertain jurisdiction and give relief wherever the principles by which the ordinary courts are guided in their administration of justice, give right, but from accident, or fraud, or defect in their mode of proceeding, those courts can afford no remedy, or cannot give the most complete remedy. It is upon this principle, of a defect in the mode of proceedings at law, that the jurisdiction of many causes has been translated from, a court of law to a court of chancery; and if such a defect be sufficient to transfer a cause, otherwise cognizable at law, to a court of chancery, a fortiori should at be sufficient to authorise the chancellor to take cog *306 nizance of a case involving matter properly of equitable jurisdiction, sooner than he would have done, if no such defect in the proceedings at law existed.
Fraud is properly cognizable in a court of chancery, as well as in a court of law ; and although, when Committed by debtors in conveying their property, to the prejudice of creditors, the chancellor, in ordinary cases, may refuse to enquire into the fraud, until the creditor, by obtaining judgment at law, establishes the justice of his demand; yet, when the debtor, by absenting himself from the country, renders all proceedings at law against him ineffectual, the chancellor, regardless of his practice in ordinary cases, will lay hold of the property alleged to be fraudulently conveyed, examine the fraud, enquire into the justice of the creditor’s demand, and finally, by acting on the thing, grant the appropriate relief: It is true, according to the ancient practice in chancery, no decree could be pronounced against a defendant, without the personal service of process ; but we have, in this country, a statute authorising, in all suits in chancery against absent defendants, an order for publication; and the publication, when made, is, for all purposes of trial, equivalent to the personal service of process. The power conferred by that statute on the court, to cause publication to be made, should, no doubt, be confined to cases of equitable cognizance; but we have attempted to show, that the present case is of that character. The circumstance of the debtor, M’Millen, having returned to this country after the bill was exhibited against him, cannot affect the power of the court to decide the contest; for as the court regularly obtained possession of the cause, it was proper to retain it for a hearing; and they finally decided correctly, in pronouncing the deeds from Samuel M’Millen to his brother Kennedy, fraudulent.
But it is to reverse that part of the decree which dismissed Scott’s bill as to the other defendants, he has brought the cause to this court; and it is to that branch of the decree, the arguments of counsel, on both sides, were principally directed.
On the part of Scott, it was contended, that the cause ought to be decided according to the state of facts as they existed at the commencement of his suit; that the conveyances made by Samuel M’Millen to the *307 other defendants, after the suit was commenced; and whilst it was pending, are inoperative ; and that, having shown the deeds from Samuel M’Millen to his brother fraudulent, and established the justice of Scott’s demands, the property should be made subject to the satisfaction of those demands. Whereas, it was insisted on the part of the other defendants, that, being also creditors of Samuel M’Millen when the conveyances were made by him to his brother, they have equal equity with Scott; and having obtained conveyances of the property, equity ought not to decree against them.
Where a suit in chancery has been instituted to subject lands fraudulently conveyed, to the payment of a debt, it gives the complainant a lien on such lands, commencing with the lis pendens.
It must be conceded, that when the debts asserted by each party to this contest were contracted by Samuel M’Millen, neither possessed any superiority to the other. Neither created any specific lien on the property of M’Millen ; all were equally just, and imposed on M’Millen equal obligations for payment. Between creditors thus equal, M’Millen might, no doubt, before the commencement of any action against him, have preferred either, by making a bona fide conveyance of bis property, in satisfaction of his demand. He might have done so, even after the commencement of an action by either, to establish his demand. The right of a debtor, under such circumstances, to prefer any of his creditors, has been frequently decided by the English courts, in expounding their statutes against fraudulent conveyances, and may, as a general principle, be considered as incontrovertibly settled.
2. But whilst the general principle is conceded, its application must be confined within certain limitations. It must be confined to cases where the suit against the debtor is brought exclusively to establish a pecuniary demand. In such a case, the debtor’s property is not in litigation, and his power over it remains as it was before the suit was commenced.
But not so, in a case like the present. Here, the complainant claims a pecuniary demand; but his suit is brought to subject to that demand the specific property which had been fraudulently conveyed by his debtor. Here, the complainant was prevented, by the conduct of his debtor and the defects in the mode proceeding at law, from pursuing his debtor in the courts of law. Here, the complainant was compelled to resort for relief to a court possessing no jurisdiction *308 over the person of his debtor, but possessing competent power over the property. Here, the property gives jurisdiction to the court; the right of property is in contest, and during the pendency of such a contest, no transfer of the property by the debtor can be admitted to produce any prejudicial effect on the complainant’s demand. In this case, we attach no consequence to the circumstance of an injunction having been granted by the court, to restrain the defendants from conveying the property. That injunction was dissolved before the conveyance was made by Samuel M’Millen to the other defendants, and the cause must, as to those defendants, be decided as if no injunction had ever been awarded. But we go on the Broad and general principle, that after the commencement of Scott’s suit, and a lis pendens created as to the property, no conveyance of the property by Samuel M’Millen can prevail. This principle was adopted at an early period in the history of chancery jurisprudence, has been followed and acted on since by various successive chancellors, and finally is admitted by ail elementary writers on the subject, to be the established doctrine of the court. The correctness of this principle was not contested in argument; but the propriety of applying it to a case like the present, was denied. It was urged, that there exists no specific lien on the property, in favor of Scott; and it was insisted, that there must be such a lien to bring the case within the influence of the doctrine as to purchasers pendente lite. It is true, the principle for which we contend, has been more frequently applied to the case of specific liens ; but it is equally true, that it has been applied, and we apprehend applied correctly, to cases analogous to the present. The case of Edgell vs. Haywood, 3 Atkins 356, is strongly in point. That was a case where a legacy had been given to a debtor after he was discharged under the laws of England concerning insolvent debtors, and the suit was brought in chancery, by a creditor, tq subject the legacy in the hands of the executor to the payment of his demand. In that case, after sustaining the bill. Lord Hardwick, in delivering his opinion, observes, “ the court does not proceed, in this case, on the ground of a specific lien ; but only considers it a part of the property of the debtor, which the creditor cannot come at without the aid of this court. *309 If, therefore, after the fieri facias, the debtor had assigned this, bona fide, and for a valuable consideration, and without notice, it would prevail and be good against this creditor. But after a bill brought, and a lis pendens created as to this thing, such assignment could not prevail.”
In such case, the lien of the creditor first commencing suit, cannot be defeated by a voluntary setting aside the fraudulent conveyance, the grantees’s re-conveying to the grantor, and the grantor’s then mortgaging the land to other bona fide creditors, whose debts were due before suit was commenced.
The pendency of an injunction against conveying, &c. is not necessary, to give to the complainant creditor this preference and lien.
*309 That case, it is true, was brought for a chattel interest ; but the principle recognized grew not out of any peculiar quality which chattels possess. It had its origin in more general reason, and applies universally to every description of property. It has its foundation in the creation of tribunals' of justice, and results from the necessity which all are under, in a civil community, to apply to courts of competent jurisdiction for the redress of in juries. Idle would be that grant of jurisdiction, which did not confer on courts all power necessary to effect its object. In vain may courts be established with power to decide contested rights, and useless the appeal to them, if, by transferring the thing sought, the defendant could elude the justice of the court.
The circumstance of the defendants to whom the conveyances were made, being creditors of Samuel M’Millen, does not take the case out of the principle for which we contend. The conveyances made by Samuel M’Millen to his brother, were, no doubt, void as to his other creditors, as well as to Scott; but, though void as to all, each possessed the same right to pursue his remedy for redress, that might have been pursued, if the fraud had not been committed. Either creditor might, therefore, have exhibited his bill in chancery, after M’Millen left the state; but as all, except Scott, failed to do so, Scott, by his legal diligence in pursuing the property, has placed it within the control of the court, and the court should pronounce its decree, regardless of the conveyances made while the property was in litigation.
What should have been the decree, if the defendants had also appealed to the court, to obtain satisfaction of their demands against Samuel M’Millen, need not now be decided; for they have not made that appeal; but, instead of doing so, have relied on procuring conveyances contrary to the settled rules of equity, and must abide by the consequences of their own illegal acts.
*310 It results, that the decree must be reversed with costs, and the cause remanded to the court below, and after causing an account to be taken of the demands of Scott, a decree to be there entered, not inconsistent with the principles of this opinion.