At the following November term the opinion of the Court was delivered by
Parker C. J.
Several questions have been raised by the counsel for the defendant in this case, which are important in their nature, and which the interest of a mercantile community require should be distinctly settled, if they may be considered now as at all doubtful. It would be strange, if, at this late period of knowledge in commercial law, any new principle should be wanted to regulate the daily concerns of merchants with negotiable securities ; if there be any ambiguity remaining, it can only be in regard to the application of rules and principles which have already been defined and established, to cases varying in some measure from those to which those rules and principles have been heretofore applied.
With respect to the demand upon the maker of the note there is no room for question. Codman testified, that, at the request of the plaintiff, he made a personal demand upon one of the makers, having the note with him at the lime. This is sufficient,.for the demand may be as well made by an agent as by the principal, and there is no need of a power of attorney or any written instrument to constitute an agent for this purpose ; if he derived no peculiar authority from his character as notary public, certainly his power as agent was not diminished thereby ; having the note with him for the purpose of making the demand, he was authorized to receive he money and deliver up the note.
*412 The objection which has most attracted our attention relates to the form and manner of notice to the defendant, as indorser of the dishonor of the note.
The same witness testified, that on the afternoon of the same day on which he made the demand of the makers, he put a written notice into the post-office, directed to the defendant in North Bridgewater, which was his place of residence, informing him of the non-payment by the promisors and requesting the defendant to take up the note. In this notice be did not state at whose request he did this, nor did he inform the defendant who was the owner of the note.
On these facts three questions are raised. 1. Whether thp notice was not too soon, it being on the day on which the note became due. 2. Whether it was sufficient in form and substance. 3. Whether the putting the notice into the post-office seasonably was sufficient and conclusive, so that proof that it was never received might not have availed the defendant.
The first point is settled too clearly by authorities to require discussion. The principle adopted in England and in this Commonwealth, in relation to negotiable securities, is, that after refusal to pay on demand made on the day when the money is due according to the contract, the note or bill is dishonored, and notice may be immediately given to the drawer or indorser ; Burbridge v. Manners, 3 Campb. 193 ; Bayley, (4th ed.) 219 ; though it is not necessary it should be given until the day after, or, if the indorser is in another town, by the next mail after the day on which the demand is made. The earliest possible notice of the fact which renders the indorser liable, is the most advantageous to him, as the object of the notice is to enable him to secure himself.[1]
2. But it is objected, that the notice proved is deficient, in not containing information at whose request it was given, or who was the owner of the note ; so that the indorser could not know, from that source, where to apply to pay the money and take up *413 the note. There is some show of reason in this objection, and yet we are satisfied that it is not of sufficient weight to prevent judgment upon the verdict. Knowing, as we do, that the precision demanded has not been generally practised by the banks in which notes are left for collection, or by notaries public by whom it has got to be the custom to transmit the notice, we should require positive authority in support of the objection, before we could, by listening to it, sanction the mischiefs which would be likely to ensue.
It is stated in all the authorities, that no particular form is necessary ; that the great object of the notice is to put the party affected by it on his guard ; and if he is informed of the two principal facts, that the note is dishonored and that the holder looks to him for payment, he may easily acquire all other knowledge necessary for his safety. Bayley, (4th ed.) 207 ; Reedy v. Seixas, 2 Johns. Cas. 337.[1] When the notice is received from a bank, he ought to presume that the note is there, and that the bank is the agent of the holder to receive the money and deliver the note. So when a notary public or any other agent transacts the same business. If the indorser should apply to such agent and offer the money and demand the note, and the agent should be unable or unwilling to receive the money and deliver the note, this may be matter of defence on a plea of tender, but until some such matter is shown, it cannot appear that he is injured by not being informed in whom the property of the note rests.
In the case of Bancroft v. Hall, 1 Holt’s N. P. Rep. 476, it was decided, that sending a letter by a private hand to an agent, requesting him to give notice, was sufficient; and indeed, in a great majority of instances, the notice must be given by an agent, and when so given it is in the power of the party by inquiry to ascertain every thing essential to his interests.
3. The most material point of the objection to the notice in this case is, the supposed defect of proof that it was actually given. The evidence on the trial showed only that it was put into the post-office seasonably, and the defendant was ready to prove that it never reached him.
*414 To give this objection a fair consideration, we are to take it for granted that it actually miscarried, so that there was no notice in fact of the dishonor of the bill when the suit was com menced. I do not know that this point has been in totidem verbis decided, and yet enough has been decided to lead inevitably to the conclusion, that, in a case where it is proper that the notice should be sent by mail, putting the letter containing it, properly directed, seasonably into the post-office is either notice in itself, or such due diligence as will stand in its stead It has been so considered by the two most approved writers upon bills and notes, and after frequent opportunities to revise their works in repeated editions, and after the position they lay down had been many years before a learned bench and bar, in a country where every point of commercial law is criticized with great severity.
Thus Chitty says, “With respect to the mode of giving the notice, it is sufficient, both in the case of a foreign and an inland bill, to send notice by the post even though the letter should miscarry ; for it would be very unreasonable to make it incumbent on the holder to send a person with the notice, where perhaps the distance may be very great.” Chitty, (5th ed.) 285. And Bayley, whose treatise is one of the best, if not the very best on the subject, and who was himself the editor of the last edition of his work, after being several years one of the justices of the King’s Bench, says, “ Sending notice by the post is sufficient though it is not received.” Bayley, (4th ed.) 227. Both these writers cite the case of Saunderson v. Judge, 2 H. Bl. 509, for the position which they thus lay down in unequivocal terms.
Upon examining this case of Saunderson v. Judge, I must confess it does not appear to me fully to warrant the position of the two writers above cited, in the broad and unequivocal terms in which it is laid down ; for the most that was expressly decided by the court is, that the sending the letter by the post was sufficient evidence of notice ; and the decision in those terms would leave it uncertain whether it was intended to decide any thing more than that such evidence uncontradicted, or without any thing shown by the other party, was sufficient ; and if this was all, it would make it nothing more than prima facie *415 evidence But where we find two such writers as Chitty and Bayley, both of them peculiarly skilled in the law merchant, adopting in their text the position, that sending by the post is sufficient, although the letter might never be received, and repeating the doctrine in every revised form of their works, we must suppose that the decision in the case of Saunderson v. Judge was taken by the profession in a more extensive sense than the language in which it is promulgated would seem to us to warrant. And we are the more constrained to adopt this opinion, when we do not find, that down to the present day the doctrine which they inferred from that case has been denied by any court or judge in England ; but, on the contrary, that Lord Ellenborough,, who, at nisi prius, in the case of Parker v. Gordon, 7 East, 385, had nonsuited the plaintiff, because he proved nothing more than that the letter of notice was put into a receiving post-office, upon being shown the case of Saunderson v. Judge, on a motion to set aside the nonsuit, at once yielded to its authority, and said he saw no objection to grant ing a rule to show cause ; thus correcting an inadvertency which arose from the omission to cite that case at the trial. W.e must, therefore, consider the law as settled in England on this subject, and some examination of cases which have occur--ed in this country will show that the same law either has been, or without doubt will be, recognized here, whenever the question shall be brought nakedly before the court.
It should be remarked here, that the very question presented by the case before us is not likely to occur often. Perhaps it has not directly occurred before ; for, it being undisputed that the fact of putting the letter into the post-office is at least primli facie evidence of notice, the party to be affected would rarely be furnished with negative evidence to defeat the presumption ; and in some cases where he might be, it certainly would no avail him, as if he should offer to prove that he was absent when the mail arrived, having no one to receive his letters ; and even proof of inability by sickness to receive or read his letters would form no defence, for due diligence to give notice would be sufficient; so that the only case, probably, which would ever be proffered as an answer to putting the letter into *416 the office,' would be the miscarriage of the mail, an incident not likely often to happen.
There are cases, however, in this country, which go as far as Saunderson v. Judge, and from which the same inferences may be drawn here, as have been drawn from that case in England. Thus in the case of Bussard v. Levering, 6 Wheat. 102, it was decided, on error, that putting a letter into the post-office containing the notice was sufficient; and the same point was decided in the case of Lindenberger v. Beall, ibid. 104. In Lenox v. Roberts, 2 Wheat. 377, Chief Justice Marshall, in laying down the rule as to notice, says, it should be put into the post-office early enough to be sent by the mail of the succeeding day after a demand on the maker.
Several cases have occurred in New York which have a similar tendency. Thus in the case of Chapman v. Lipscombe, 1 Johns. Rep. 394, the bill was drawn in New York by the defendants living in Petersburg, Virginia, and being there when the bill was dishonored ; but their place of residence not being known, notice was put into the post-office directed to them at Norfolk, Virginia, and another directed to them in New York. This was held to be sufficient to show due diligence in the holder, and yet it must have been certain that the notice could not have been received in the regular course of the mail. And in the case of Ogden v. Cowley, 2 Johns Rep. 274, it was holden that notice put into the post-office seasonably was sufficient.
In this Commonwealth but one case has occurred, which has any considerable bearing upon the point; this is the case of Munn v. Baldwin et al. 6 Mass. Rep. 316, in which it was only decided, that the putting of the letter into the post-office was prima facie evidence of notice ; but the remarks which fell from Chief Justice Parsons, in delivering the opinion of the Court, convey a strong intimation that the evidence would have been held conclusive, if the case had required such a decision. His words are, “ If it was agreed that the letter miscarried and that the defendants did not receive it, it might be a question at whose risk the letter was sent by the mail; and whether, the regular mail being the method of conveyance assented to by the defendants, they must not be answerable for *417 the miscarriage, in the same manner as if a letter sent by their private servant had not been delivered by him.”
And this hypothetical case really contains the whole gist of the question. For the mail being established by the standing laws of the government, for the purpose principally of facilitating the transmission of mercantile correspondence, and it being by far the most usual conveyance of letters, and generally the most sure as to time, and safe in every other respect, all men who deal in mercantile paper are presumed to assent, and even to expect, that such information as they may want will be communicated in this way. And thus the post-office becomes their agent ; and if it happen to fail from any unexpected cause, he who made the right use of it by placing his letter there, properly directed, has done all his duty, and the consequences must fall upon him who has to receive.
It is not difficult to foresee, that if this doctrine be not true, great inconveniences and uncertainties would atténd the transaction of business with negotiable paper, and a clog would be put upon its circulation, which would have a mischievous effect upon that credit which is so essential to commercial activity. The only perfectly sure way of fixing a party to a bill or note by notice of its dishonor, would be to send it by a special messenger, who would be able to testify to its actual delivery ; and this would be excessively burdensome and expensive. There is indeed no hardship to the indorser in the rare case of a failure of actual notice, which can be compared in its effects to the general mischief which would ensre, if proof of an actual reception of notice were necessary If the cost of it must be borne by the holder, it would materially diminish the value of the securities, and to a man of much business would be a great item in his expenses ; and if it fell upon the indorser, as it ought to do, it would greatly increase his misfortune. It is much for the interest of the whole, that the common vehicle i-f intelligence, the mail, should be resorted to ; and when that = employed, the holder of the paper should be discharged of all further duty.
The same principle will apply to notice sent by ships to foreign countries ; if sent by a regular ship, a failure by shipwreck ought not to prejudice the holder of a bill; he has used *418 due diligence, and that is all that the law requires. We feel entirely satisfied, that in holding the notice in this case sufficiently proved, admitting the letter to have miscarried, we adopt no new principle, but merely apply settled doctrines and maxims to the case which is before us.
It has been suggested in the argument, that although the rule may be a good one when applied to indorsers or drawers who live out of the Commonwealth, there is no reason for extending it to cases where those parlies may live within the State, and perhaps within a few miles. But there cannot be one law for an indorser who may reside just over the line, in Rhode Island, and another for one who may live only a mile on this side. Whenever he resides in a town, in which there is a post-office, different from that in which the note is dishonored, it is proper to send him the notice by mail; and perhaps where he does not, sending it to the nearest post town is sufficient: so it is holden in New York. Ireland v. Kip, 11 Johns. Rep. 232.[1]
Another objection to the recovery in this action made by the defendant is, that the action was commenced too soon, viz. before the notice could have reached the defendant. The writ was made out on the evening of the day on which the note fell due, after the letter of notice was put into the post-office. By the course of the mail, the notice could not have reached the defendant until after the writ was served.
The argument is, that notice of the non-payment is essen tial to the plaintiff’s right of action ; that it is necessary to aver it in the declaration as a fact existing ; and that, as the case shows this could not be true, the plaintiff has failed in an essen *419 tial point. But this argument proceeds upon the ground, that ¡here must be an actual reception of notice before the plaintiff can sue ; and this is certainly fallacious. If the putting of tno letter into the post-office is notice in itself, which we have shown, then it was given before the commencement of the suit. And it would be mischievous to decide otherwise, for every plaintiff’s right of action would commence at different times, according to the distance of the party sued ; and the lime of suing must be conjectured, as it cannot be known when the notice will be actually received. Besides, if the object of waiting be to give the party opportunity to take up the note, there must be a sort of double usance ; for the holder must wait till his letter is received, and for a reasonable time afterwards for the party receiving it, to come and pay the money. Who would take a bill or note remitted from New Orleans, if this doctrine be correct ? And if the parties liable be beyond sea, such instruments would be mere waste paper. If the bill should not be accepted, or the indorsed note not paid, the unfortunate holder, with property belonging to the drawer or indorser before his eyes, must remain an idle spectator of the scramble of other creditors for it, or suffer it to be withdrawn by the debtor himself, without the power of arresting it. This cannot be sound doctrine ; an averment of notice will be sufficiently proved, by showing that the steps necessary to give the notice have been taken ; if subsequently received, it will relate to the time when it was sent; if never received, the fact of having put it in the proper train is enough.
In the case of Stanton v. Blossom, 14 Mass. Rep. 116, it was held that a suit commenced on the same day with the dishonor of the bill, and before notice was put into the post-office, which, however, was put in on that day, was maintainable [1] and the reasons there given against compelling the plaintiff to wait until notice shall have been received, are very cogent.
That case also settles, by strong implication, the point, that the mere putting the letter into the office is, in law, notice.
In many English cases, and in New York, and in this Commonwealth, it has been settled, that an action lies against the drawer of a bill immediately on the dishonor of the bill. No *420 tice is necessary in this case, if there were effects or an expec tation of them when the bill was drawn, and yet the action lies immediately ; it must be, therefore, that the receipt of notice, or time for it to be received, is not necessary. The right of action accrues against the drawer of a bill on refusal of the drawee to accept ; so on a note against the indorse! when the maker refuses to pay. There must be notice, but if on trial it is proved to have been seasonably given, the plainU'fl will recover. Thus where a bill is drawn by one who after wards becomes bankrupt, and the bill is returned, it may be proved under the commission, although notice of the dishonor could not possibly have reached the drawer ; and yet notice must be proved to have been given. See Bayley, (4th ed.) 264 ; Milford v. Mayor, 1 Doug. 54 ; Bull. N. P. 263 ; 3 Wils. 17 ; 2 Str. 949; Forman v. Jacob, 1 Starkie, 46 ; Watson v. Loring, 3 Mass. Rep. 557 ; Chitty on Bills, (3d ed.) 184, 169 ; Puckford v. Maxwell, 6 D. & E. 52 ; Starey v. Barns, 7 East, 435.[1]
Upon all the points, therefore, we think that the objection», fail and that the plaintiff is entitled to recover.
Judgment according to the verdict.[2]

 Crenshaw v. McKeirnan, 1 Minor, (Ala.) 173; Greeley v. Thurston, 4 Greenl 479 ; City Bank v. Cutter, 3 Pick. 414 ; Boston Bank v. Hodges, 9 Pick 420. But an action brought against the maker of a promissory note cn the third day of grace was held, in New York, to be prematurely brought. Osborne v. Moncure, 3 Wendell, 170. See Hartley v. Case, 1 Car. & P. 555 S. C. 6 Dowl. & R. 505.

 Mills v Bank of the United, States 11 Wheaton, 431; Shrieve v. Duckham, 1 Littell, 308.

 Ferris v. Saxton, 1 Southard, 1; Bank of Columbia v. Lawrence, 1 Peters's S. C. R. 578; Cuyler v. Nellis, 4 Wendell, 398. But :"t is not indispensable that the notice should be sent to the post-office nearest to the residence of the indorser; it is sufficient if sent to the office to which he usually resorts for his letters. Bank of Geneva v. Howlett, 4 Wendell, 328; Reid v. Payne, 16 Johns R. 218. See Gist v. Lybrand, 3 Ohio R. 319; State Bank of Elizabeth v. Ayers, 2 Halst. 130. If the indorser resides in the same town as the holder, depositing the notice in the post-office of the town is nót a sufficient notice. Clay v. Oakley, 17 Martin’s Louisiana R. 138; Smedes v. Utica Bank, 20 Johns. R. 372; Shephard v. Hall, 1 Conn. R. 329 Now altered by statute, in Louisiana Pritchard v. Scott, 19 Martin’s R. 492. See also Louisiana State Bank v. Rowel, 18 ibid. 506.

 See New England Bank v. Lewis, 2 Pick. 125.

 The cases of Hopkins v. Gerrish and. Gilbert et al. v. Field et al, were de termined at the same time upon the same principles.