Judge Nicholas
delivered the Opinion of the Court.
Wilson, as a judgment creditor of John Benbrook, filed bis bill, in 1824, against him and Ezekiel Benbrook, to set aside a deed from John to Ezekiel, as fraudulent a-ga'nst creditors, and to subject the land conveyed to the satisfaction of his judgment. The relief sought was ultimately obtained; the land sold under a decree of the court, Wilson became the purchaser, and it was conveyed to him, by a commissioner, under the decree.
Subsequent to 'the service of subpoena on John and Ezekiel Benbrook, a fieri facias, which issued on a judgment against Ezekiel, was levied upon the land, and the same sold to one Coffey, who conveyed it, in trust, to secure debts. The laud was afterwards, by decree of *407 court, sold under this trust; Watson became the purchaser, and the right of Coffey and the trustees was conveyed to him, by a commissioner, under that decree.
The question of law arising upon the facts agreed.
Pending Wilson’s suit against the Benbrooks, Ezekiel died. His death was suggested on the record, in July, 1826 ; but the suit was not revived against his heirs, till October, 1S28.
In January, 1828, Watson made his purchase, under the decree in the other suit; and in April, 1828, the commissioner’s deed to him, was approved, and ordered to record.
Watson having got into possession, Wilson brought an ejectment against him, and the foregoing facts having been presented by an agreed case, the circuit court rendered judgment in favor of Wilson — treating the conveyance to Watson, and that to Coffey, under whom he claimed, as absolutely void, because made pending Wilson’s suit against the Benbrooks, in which he ultimately obtained a decree.
it is now contended, in behalf of Wjlson, that the judgment of the circuit court is fully sustained, and the whole case concluded, by Scott vs. McMillan, 1 Litt. 307, and Scott vs. Coleman, 5 Mon. 73.
On the other hand, it is contended, in behalf of Watson : first, that the conveyances to Coffey and Watson, were not overreached and rendered absolutely void, by that to Wilson ; but, that they passed the title, and are only voidable by a suit for that purpose; because the effect of the lis pendens was merely to give constructive notice, and actual notice of an equity having only the effect of enabling the holder to get, by suit, the title from a purchaser, with such notice: second, that Wilson’s suit having been instituted in 1824, and no decree obtained till 1829, the delay being unexplained, he was guilty of such negligence in the prosecution of his suit, as deprives him of the benefit of the rule which makes a pendente lite purchaser take subject to the decree. Third, that Watson’s purchase having been made after the death of Ezekiel Benbrook, and before any revivor against his heirs, there was no lis pendens.
A pendente lite purchaser, & the purchaser of ti.e legal title to an estate, with notice of an outstandingequity, do not stand upon precisely the same footing.— The former is absolutely concluded by the decision of the pending suit— which might otherwisebe rendered nugatory by alienations of the estate; and if the suit be not prosecuted successfully, tlib purchaser is not affected by it ; it does not operate as notice to him. The latter acquires the legal title by his purchase, and can only be divested of it, by a suit upon the equity of which lie hud notice, and a decree aaainst him.
It is a misconception of the rule for the protection oí suitors against pendente lite alienations pf the property sued for, to .suppose-that it rests upon the principle, or upon any analogy to the principle, which protects the holder of an equity, against h purchaser of the legal estate with notice. It is frequently said in the books, that lis pendens is notice; but, that is a loose mode of expression, not warranted by the reason or spirit of the rule. The best view of the subject we have met with, is couched in the following language of the Court of Appeals of Virginia, 2 Randolph. ‘‘The rule as to the effect of Us pendens, is founded on the' necessity of such rule, to give effect to the proceedings of a court of justice. Without it, every judgment and decree for specific property, might be rendered abortive, by successive alienations. This necessity is so obvious, that there is no occasion to resort to the presumption of notice of the pendency of the suit, to justify the rule. In fact, it applied, where there might have been a physical impossibility that the purchaser could have known of the existence of the suit. For at common law, the writ was pending from the first moment of the day on which it bore teste, ancí a purchaser, on or after that day, held the property subject to the execution upon the judgment in that suit, as the defendant would have held it, if no alienation had been made. The court of chancery has adopted the rule, in analogy to the rule at-common law, but relaxed in point of severity. . This principle, ho'wever necessary, was harsh in its effects on purchasers, and was confined in its operation, to the extent of the policy upon which it was founded ; that is, to the giving full effect to the judgment or decree, which might be rendered in the.suit depending at the time of purchase. As a proof of this, if the suit was not prosecuted with effect, as if a suit at law was discontinued, or a suit in chancery dismissed for want of prosecution, or for any other cause not upon the merits, although the plaintiff might bring a new suit for the same cause, he must .make him who purchased during the pendency of the former suit a party ; and in this new suit, the purchaser would not be at all affected, by the pendency of *409 e former suit at the time of his purchase. If a lis -pendens was notice, then it should bind the purchaser, like actual notice, in any subsequent suit prosecuted for the same cause ; but, this it does not. English judges and writers have carelessly called it notice, because in the one single case of a suit prosecuted to judgment or decree, it had the same effect upon the interest of a purchaser as notice had, though for a different reason. But the courts have not in any case given it the real effect of notice.”
Whether a Us ens Pur' a tide that"^,m h‘m> notwithstanding the termination gain^t.liis^rigiit'' requiringanoth¿¿m"'to^dfrest him of thé legal -ther'hispidoIs absolutely void fect, is a quespon (of no great importance)not known to have been decided.— dine to the o-a'title’^absolutely void;
Concurring in most, if not all, of this lucid exposition of the subject, we cannot'deem a pendente lile purchaser, as standing in the attitude of a purchaser of the legal estate, with notice of an outstanding equity ; but rather in that of a party, or at least of a privy, to the suit; for his' rights are absolutely concluded by the final determination of the suit, as though he were a party or privy.
Whether in the ordinary case, where the legal estate is conveyed to a third person, pending a suit for the recovery of the property, the title will remain with him, notwithstanding the successful prosecution oí the suit, . subject to oe divested by a new suit; or, the decree, and proceedings under it, are made by relation te take effect from the institution of the suit, so as totally to vacate and avoid the intermediate conveyance, is a question of some difficulty on the score of authority,'and which, so far as we can learn, has never been distinctly presented and determined. It would seem to depend on the other question — whether the effect of the rule as to lis pendens is given in analogy to the same rule in a real action at law, as intimated by the Court of Appeals ox Virginia, or to the liens, in favor of different judgments or execations. The enquiry, however, has more of nicety, than substantial utility, for if the result of the suit concludes the question of right, between the purchaser and complainant, as though the purchaser had been a party to the suit, it must be conclusive between them in any other litigation concerning the .actual right to the property ; and it can be of little moment, though, in legal contemplation, the mere naked title should remain with- *410 the purchaser, as he can exert it for no beneficial purpose whatever. Though there are cases and dicta that seem to give countenance to the idea, that the title does so remain with the purchaser, yet, it is difficult to understand how this can be, without putting at hazard the whole doctrine as to the effect of lis pendens in favor of the complainant; for it is well settled, that a decree is not notice, and, ‘as after decree there is no longer a Us pendens, the purchaser might, after decree, successfully alienate to an innocent third' person, so as tb defeat the result of the complainant’s suit ; which would admit the very mischief the rule was made to obviate. This however, is an enquiry not necessarily called for in this case; for, according to the doctrine of Scott vs. McMillan and Scott vs. Coleman, the institution of the suit by the creditor, gives a specific lien upon the property which he seeks to subject to his judgment. The effect given to it, of squeezing out subsequent execution levies, could onlv have been given on the idea, that, the institution of the suit created a specific lien similar to, and with the like effect of, the lien of an execution, which‘overreaches, and by relation, avoids subsequent alienations. There is no superiority of equity, as between the contending creditors. Each has equal right to make his debt out of the debtors property. The priority is only gained, by virtue of the priority in point of time, in obtaining the lien. The suit is not the mere enforcement of a direct lien upon the property, but itself originates and constitutes the lien, to effectuate which, to the extent allowed, it is obviously indispensable, to make the decree and the proceedings under it relate back to the institution of the suit. Subsequent purchasers under execution can stand in no better attitude, than mere pendente lite encumbrancers of an equity of redemption, who, it is well settled, the complainant need not bring before the court.
A suit to subject an equitable estate to the satisfaction of a debt, creates a Jienuponthe estate, commencing with the institution of tbs suit, and overreaehingallsubsequenteonveyances and levies
To a lis pen-dens purchaser, and to a purchaser with notioe of an outstanding equity, the same rules as todili^ence¡, apply.
*410 Notwithstanding the distinction pointed out as to the two classes of cases, yet as to the degree of diligence with which they should be prosecuted, in order to secure the benefit of the lien or Us pendens, they should be govern *411 ed by the same rule or principle. Whilst affording this lien, which is a mere creature of the court, in favor of the complaining creditor, it is most manifestly proper, that he should be held to at least the same diligence in prosecuting his suit, as is required to entitle a party to the benefit of his lis pendens. It remains, therefore, to determine the effect of the imputed laches, and of the abatement of Wilson’s suit, as to Ezekiel Benbrook.
A pending suit, .and an outstand ing equity,must be alike prosecuted and asserted with diligence, to prevent a purchaser from being exonerated: but what degree of diligence is required, — and what suspensions may beallowed, has not been clearly defined : culpable negligence, in either description of case, would no doubt be fatal. — And,
It is said by several writers, that in .'order to affect a purchaser, there must be a close and continued prosecution of the lis pendens. This has been said, as is presumed, mainly upon the authority of Preston vs. Tubbin, 1 Vern. 286 ; as no other case is found cited in support of the doctrine, or in which it has been distinctly acted upon. In that case, thére is an observation, that there ought to be a close and continued prosecution of the lis pendens; but it seems to be the observation of the reporter merely, made for the purpose of indicating what the case decides. But the case decides nothing more, than that the pendency of a suit, at the time of purchase, does not affect the purchaser with notice, in any new suit, the first having been dismissed or discontinued. Lord Bacon’s rule, which probably was the fountain of ail this doctrine, by requiring that the suit should' be in full prosecution at the time of the purchase, would seem to intimate, that there is a degree of intermission in such prosecution, which will deprive the complainant of- the protection of the rule. All the writers concur in this idea; but, what degree of intermission will have this effect, it is impossible to ascertain from them, with any distinctness. In a case decided by Lord Clarendon, and cited with approbation by Lord Nottingham, the bill was filed in 1640, abated by a death in 1648, the purchase made in 1661, and the bill of revivor not filed till 1662.; still, the purchaser was held bound. But this case, when subsequently cited, has been accompanied with the indication of decided disapprobation; and Mr. Sugden says, it was attended with circumstances, that strip it of all character as an authority upon the point in question. The case was cited by Sir William *412 Grant, in Winchester vs. Paine, 11 Ves. 200, to shew Lord Nottingham’s opinion, that it made no difference, though the purchase was during an abatement of the suit, if afterwards revived and prosecuted to a decree ; but, at the same time, gave it as his own opinion, that in such case, there would be great difficulty in holding the purchaser bound •, without-however, suggesting any reason for such difficulty. Mr. Sugden, after noticing this intimation of opinion, suggests, “ that if ever the point should call for a decision, it will probably turn upon the question, whether the plaintiff was guilty of laches in reviving the suit.”
•' Where a suit has been instituted to subject an estate to the satisfaction of a debt, and a defendant dies, if the complainant fails to revive the suit within a reasonable time, he may lose the benefit ofthsjien created by the suit; and one who purchases the estate between the abatement and revivor, but af£er a lapse of time, within which it ought, prima facie, to have been revived, " may hold it notwithstanding the lis pendens subsequently revived, unless the comp’nt can show a good excuse for his delay ip reviving.
*412 It was held by Lord Redesdale, that a purchase made after the dismissal of a bill, was subject to the final disposition of the cause in the house of Lords, provided an appeal was afterwards taken, and such is the received doctrine in England. We perceive no satisfactory reason why a purchaser during the temporary abatement of a suit, should not be affected in the same way. A suit like this, can with equal, if not greater propriety, be said to be pending, after an abatement by death, than after decree and before appeal in England, or writ of error in tliis country. The question seems properly resolvable, as suggested by Sugden, into an enquiry whether, the complainant was guilty of culpable negligence, in reviving his suit.
As to the negligence objected to in this case, we are not prepared to say, nor does our experience of the ordinary progress of a chancery suit, in this state, authorize us in saying, that from May, 1825, when the subpoena was served, till April, 1828, when Watson obtained his deed, there was that lapse of time, which, unexplained, would of itself amount to such laches, as to deprive the complainant of the benefit of the rule.
But the delay in reviving the suit, of nearly two years, to the time when Watson completed his purchase, and of more than two years to the time of revivor, without any step taken towards a revivor, and without any explanation or excuse shewn for the delay, is of a different character. If such delay, for two- *413 years, does not need explanation, we should have much difficulty in saying what length of delay would require it. Np satisfactory reason suggests itself, for saving it from the inculpation of gross and wilful negligence. We are, therefore, bound to say, that there was not such a prosecution of Wilson’s suit, as entitles him to the protection of the rule, and that his decree, and purchase under it, cannot be permitted to overreach and avoid the conveyance to Watson. The rule, though necessary and indispensable, has.ever been deemed harsh and rigorous, in its operation against bvna fide purchasers ; and it is said,' that, in England, if the complainant, “ make a slip in his proceedings, the court will not assist him to rectify the mistake.” We deem it- strictly proper, that he should be held to something like reasonable diligence in the prosecution of his suit, to entitle himself to the protection of the rule.
The judgment must be reversed, with costs, and the cause remanded, with directions to again submit it to a jury, pursuant to the terms of the agreed case, and with instructions, that upon the facts agreed, Watson’s purchase is valid, and that he thereby obtained the title of Ezekiel Benbrook ; and to permit Wilson, if he can-do so satisfactorily, to adduce proof in excuse of the delay in reviving his suit against the heirs of Benbrook.