IN this case the defendants in error filed their bill under the statutes of 1837 and 1838, attaching goods of the plaintiff and praying a decree, and that the property be subjected; and a decree was rendered, that the plaintiff in error pay the debt by a particular day, &c. They brought the case to this Court, and it was affirmed, and damages awarded. A motion being made to correct the mandate on the ground that damages should not have been awarded under the statute, the motion was overruled.

REPORTER.

---

CHANCERY.

*Case 54.*

*Oct. 24.*

## Shiveley's Administrators *vs* Jones, &c.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Mortgages.   Foreclosure.   Fraudulent conveyances.*

JUDGE MARSHALL delivered the opinion of the Court.

A purchaser under a sale made under a decree of foreclosure and sale under a junior mortgage, where the senior mortgagee was not a party may properly, on petition, have the sale and his purchase set aside.

A decree of foreclosure and sale of mortgaged estate is properly set aside on bill of review, where the mortgagor had died and his heirs were not before the Court.

THE junior mortgagee not having made the elder mort. gagee a party to his suit for foreclosure and having proceeded to decree and sale after a decree and sale and conveyance to the purchaser under the elder mortgage, the legal title did not pass to the purchaser under the junior mortgage, and the sale was properly set aside on his petition disclosing the facts and his mistake as to the title which he was purchasing.

For the defect in the proceeding already stated, and because the heirs of the mortgagor were not properly before the Court in the same suit, the decree of foreclosure and sale upon the junior mortgage. was properly reversed and set aside upon the bill of review of said heirs, and the administrator of the mortgagor. The suit upon the senior mortgage was perfect in its form and preparation unless it be a defect that the junior mortgagee was not made a party. If this were a defect, still the legal title passed to the purchaser under a decree of sale, and the only

question is whether it is held absolutely, and out of the reach of the junior mortgagee or whether because the latter was not a party he may afterwards regard the purchaser as mortgagee or trustee, and come in to redeem.

It does not appear that the senior mortgagee had notice during the pendency of his suit of the existence of the junior mortgage, and it is a serious question whether under this state of case, the latent equity of the junior mortgagee, wasnot forever bound by the foreclosure of the equity of the mortgagor and the sale of the premises, and transfer of the legal title to the purchaser under the decree, *Kurtz, &c.* vs *Carroll, &c.,* (4 *B. Monroe,* 40.) But the purchaser, not resting his case on this principle alone, contests and impeaches successfully as we think the validity of the junior mortgage, on the ground that it was made with the fraudulent intent of hindering and delaying the creditors of the mortgagor, and to secure a pretended debt, when nothing was in fact due. And on the other side it is contended, that the junior mortgage if fraudulent was not a fraud upon the senior mortgagee, nor injurious to him; that he could not have contested its validity, and therefore the purchaser under his mortgage cannot.

Is the equity of a junior mortgagee barred by a foreclosure and sale under a senior mortgage, where the senior mortgagee had no knowledge of the junior mortgage, and did not, therefore, make him a party—Qu.

We however understand the principle to be, that a conveyance fraudulent as to any creditors, is fraudulent as to all, unless it be such as may take benefit from it, and that as to all others it is void, and may be so treated by them wherever it lies in their way as an obstacle. If then this junior mortgage was made to defraud creditors. it was void as against the senior mortgagee as well as against other creditors; that is, it was void and might so be treated so far as it impeded him in the realization of his just demand, and a denial of his right to impeach it could be maintained only on the supposition that it could not be in his way as an obstacle.

A mortgage which is fraudulent may be assailed on that ground by a senior mortgagee as well as any creditor, unless he may take benefit from it.

But if a senior mortgagee is bound to make a fraudulent junior mortgagee a party, in order to give him an opportunity of contesting the debt, or if after a decree of foreclosure according to the English practice, without having made him a party, the fraudulent junior mortgagee would have a right to redeem; or if he has such right after a

—So a purchaser at a sale under a decree upon the senior mortgage may assail a junior mortgage asserted by a junior mortgagee, for fraud.

SHIVELEY'S AD'R.
vs
JONES, &c.

foreclosure and sale under our practice, and a purchase of the mortgage premises by the elder mortgagee, would not this be giving great significance to his fraudulent mortgage? Would it not in these cases come directly in conflict with the elder mortgagee? And if under the circumstances of the last case stated, the elder mortgagee could not impeach it on the ground of fraud, would it not, though void as to all creditors, be made valid as to him? Without pursuing these enquiries we are of opinion, that either the elder mortgagee or a stranger purchasing under a decree of foreclosure and sale upon the senior mortgage, may resist the claim of the junior mortgagee coming in afterwards to redeem, on the ground that his mortgage was fraudulent. If it were so, whatever rights he might have had against the mortgagor, he has none against the creditor or purchaser but such as the mortgagor has, and as to these he must abide by the issue of the contest between the creditor as mortgagee, and the mortgagor. Nor do we peceive that the rights of the parties, or the law of the case in this state of things, will be affected by the fact that the senior mortgagee had or had not notice of the fraudulent junior mortgage before his decree or purchase, or by the question whether any other purchaser had such notice.

It seems however that in this case, the junior mortgagee had commenced his suit for foreclosure before that upon the senior mortgage was begun, and this circumstance is relied on as affecting the rights of the parties. But whatever might have been the case, if the sale under the senior mortgage had been made while the prior suit on the junior mortgage was pending, we do not think any question upon such a state of case, is presented in this record. For by the death of the complainant in the first suit in the winter of 1825-6 that suit abated in fact, and it never was revived until June 1830, although administration was granted as early as September 1826. During this interval of four years the suit upon the senior mortgage, which had been commenced before the death of the junior mortgagee, was prosecuted to decree and sale and the title conveyed to the purchaser by deed approved by the Court; all of which was done in 1828.

*Marginal note:* A suit was brought to foreclose a junior mortgage in the winter of 1825-6 defendant died, adm'n. in Sept. 1826, no revivor until 1830; between these periods a suit is brought on senior mortgage, decree of foreclosure and sale had— Held that the purchaser was not a *pendente lite purchaser.*

And as no excuse is even alledged for the great delay in reviving the first suit, it cannot on the principle of the case of *Watson* vs *Wilson*, (2 *Dana*, 406,) be regarded as a pending suit at the time of the sale under the senior mortgage; and the purchaser at that sale not being a *pendente lite* purchaser, no question as to the effect which a *lis pendens* might have had upon his purchase, arises, and we intimate no opinion about it.

It is also suggested, in behalf of the junior mortgagee, that on the sale under the decree on the senior mortgage, brought more money than was due upon the mortgage, or was directed to be made in the decree, and as the purchaser has not yet paid the excess to the representatives of the mortgagor, he should on some or all of these grounds be regarded as occupying the attitude of mortgagee only and not that of an absolute purchaser. But although a Chancellor might upon the return of the Commissioners report, and perhaps afterwards, set aside a sale on the ground that more land had been sold than was decreed to be sold; and although a decree directing the sale of the whole property mortgaged, instead of so much as would discharge the debt might be deemed erroneous, we do not admit that in either case, a sale fairly made and confirmed by the Court, and followed by a conveyance which is approved by the Court, is *ipso facto* void, nor is it by any means certain that in the last case a reversal of the decree after a sale and conveyance, as above supposed, would operate necessarily as an annulment of the sale.

*Where more land is sold under a decree of foreclosure and sale of land under mortgage than is necessary to pay the mortgage debt, the sale is not absolutely void. Nor does it necessarily follow that the title of a purchaser, where such sale had been confirmed and the land conveyed, would be affected by a reversal.*

By the English practice the equity of the mortgagor was foreclosed without a sale, upon his failure to pay the debt as ascertained by the decree *nisi*, and the title of the mortgagee was thus rendered complete. And in some of the United States, although a sale is usually made, the practice is to sell the whole mortgaged estate, and direct the payment of the surplus beyond the mortgage debt, to the mortgagor or those entitled under him. Our present practice is to direct a sale of so much only as may be necessary to pay the debt. But even here this practice has not, until recently, been uniform.

*The English practice in cases of foreclosure and sale, was to sell all the mortgaged estate and pay the surplus, after satisfying the mortgage debt, to the mortgagor. The practice in Ky. generally, is to sell only so much as is necessary to pay the debt.*

In the case before us, the sale which was made in 1828, appears to have been fair, the price approximated as

*Where a decree of foreclosure of a senior mort-*

SHIVELEY'S AD'R.
vs
JONES, &c.

gage was made
and a sale of the
entire mortgaged
estate directed,
and made and
confirmed, and
the land convey-
ed, though the
amount raised
by the sale ex-
ceeded the mort-
gaged debt, the
Court refused to
interfere at the
instance of a ju-
nior mortgagee,
on bill filed to in-
validate the sale
after the lapse of
such time as the
validity of the
sale could be
tested on a writ
of error.

nearly as usual to the estimated value at that time; the decree directed the sale of the whole property mortgaged, and the sale and conveyance were approved by the Court. Under these circumstances, and in view of the consider-ations just referred to, we should be unwilling to say that the sale must fall, by a reversal of the decree, if indeed the decree itself should be subject to reversal, for having directed the entire property to be sold. But neither the administrator nor the heirs of the mortgagor impeach either the sale or the decree, and the time for their doing so had elapsed before the administrator of the junior mort-gagee made any suggestion on the subject. We are of opinion that he cannot, under these circumstances, inval-idate the sale or the decree on the ground of mere error

The sale, as already said, is not void; and the purcha-ser would not, in consequence of the alledged errors, hold the land in trust for the heirs of the mortgagor, if there were no junior mortgage, and certainly does not hold it in trust for the fraudulent junior mortgagee, who not being even a *bona fide* creditor, has no right to call the *bona fide* purchaser under the first decree, to account in a Court of Equity, on the ground of his pretended debt and fraudu-lent mortgage, and especially when the representatives of the mortgagor impeach his claim. With regard to the excess of the purchase price beyond the mortgage debt, at the sale under the senior mortgage, it may be stated, that the purchaser had the land valued by disinterested and capable persons, with a view of paying to the heirs of the mortgagor the difference between that valuation and the mortgage debt, for which the sale was made; and that he did pay to one of the heirs for the others, on that ac-count, more than the excess in the proceeds of the sale beyond the mortgage debt. Nor is that excess now claimed by the representatives of the mortgagor. Upon the subject of the fraud, the record shows the following circumstances upon which our conclusion is founded. The mortgage was made from an embarrassed son to his father, immediately after a heavy judgment had been ren-dered against the former for a security debt. It conveys all, or nearly all of the mortgagors property to secure an alledged debt of $2,600, to be paid in three years with

out interest- The mortgagor remained in possession, and with the consent of the mortgagee, sold the two mortgaged slaves. The alledged debt is evidenced only by an account annexed to the mortgage, and of which the items of debit and credit, consisting entirely of money charges, and two of them for more than $1,000, each are without date. There was no witness to any settlement, but the transaction was secret. No note appears to have been given up. And although there is evidence going to show that at some indefinite antecedent period, the son had received sums of money belonging to the father, there is no satisfactory evidence that at the date of the mortgage there was any subsisting debt between them. But from the circumstances just stated, and from the declarations of both father and son, that the mortgage was made to defeat the judgment referred to, the fair inference is, not only that the mortgage was fraudulent, because made with that intent, but that there was in fact, no subsisting debt between the parties, but that one was then made up out of former transactions, for the purpose of giving color to the mortgage. It appears, moreover, that the persons who, by the residuary clause of the mortgagees will, would be entitled to the benefit of this debt and mortgage, if any thing should be realized from them, executed a writing purporting to relinquish the benefit of the mortgage to the children of the mortgagor, who were their nephews and nieces. And although this writing, which is not under seal, is impeached by some of them, as being obtained by fraud and without consideration, still the alledged fraud not being proved, if the writing be not directly enforcible for want of consideration, it is entitled to weight in a suit brought for the benefit of those who executed it, as tending to show that there is no real or just foundation for the claim. And the heirs of the mortgagor insist that there is nothing due on the mortgage. We are of opinion, therefore, not only that the bill was properly dismissed so far as it sought a re-sale of the mortgaged land, which had been sold under the senior mortgage, or any relief against the purchaser, but that if it be understood as praying for the sale of any other property conveyed by the junior mortgage, or as seeking

SHIVELEY'S AD'R.
*vs*
JONES, &c.

Facts and circumstances from which the Court decide the junior mortgage to be fraudulent.

any relief against the representatives of the mortgagor, it was properly dismissed as to them also. A fraudulent mortgagee is entitled to no aid from the Chancellor for the enforcement of a pretended debt. But if he would rely upon the validity of his mortgage, as against the mortgagor and his representatives, he must seek his remedy in a Court of Law, where by the principle referred to, his legal title may be placed beyond question in a contest with the grantor or his heirs; See *Norris* vs *Norris' administrators*, (9 *Dana*, 317.)

Wherefore, the decree is affirmed.

*Guthrie* for plaintiff: *Duncan* for defendants.

