CASE 23—PETITION EQUITY—JUNE 18.

# Northern Bank of· Kentucky v. Deckebach, &c.

### APPEAL FROM KENTON CHANCERY COURT.

1. LIENS — LIS PENDENS. — A mere action to subject property upon which the plaintiff has no specific lien, there being no equitable grounds that would authorize the Chancellor to subject it, creates no *lis pendens*, and will not defeat a subsequently acquired attachment lien; but where a lien exists as between the plaintiff and defendant, and the plaintiff brings the property into court for the purpose of enforcing his lien, a *lis pendens* is created which will give the plaintiff priority over a subsequent attaching creditor, although, prior to the action, no lien existed as to creditors by reason of the fact that the plaintiff's lien was not recorded.

In this action to enforce a vendor's lien upon a brewery, and the personalty usually belonging to such an establishment, all the property, including property acquired by the defendant after his purchase from the plaintiff, was placed in the hands of a receiver. Thereafter other creditors of the defendant had attachments levied upon the property. *Held*—That as to the property sold by the plaintiff to the defendant, upon which the plaintiff had an unrecorded lien, a *lis pendens* was created which operated to give the plaintiff priority over subsequent attaching creditors; but as to the after-acquired property, upon which the plaintiff had no lien, no *lis pendens* was created, and the liens of the attaching creditors have priority.

2. CONDITIONAL SALES — MORTGAGE. — The executor and devisees of a decedent sold to appellant, a large creditor of the estate, a brew-

Northern Bank of Kentucky v. Deckebach, &c.

ery, which formed a part of the estate, and with the money thus obtained paid off all the debts of the decedent. An absolute conveyance was made to appellant, but it was agreed, at the time, that appellant should sell the property to L., one of the devisees, on a long credit, which appellant did accordingly, and executed to L. its bond for title. Prior to appellant's purchase it had refused to take a mortgage on the property. *Held* — That the transaction between L. and appellant was a sale, and can not be regarded, in connection with the sale to appellant, as a mortgage.

:3. THE LIEN OF SUPPLY MEN, provided for by the act of March 20, •1876, is not superior to a vendor's lien.

McKEE & FINNELL FOR APPELLANT.

.1. The conveyance by appellant to Louis Geisbauer was intended by the parties to be an *absolute* sale, and not a mortgage, and that intention must govern. (Jones on Mortgages, vol. 1, sections 267, 268, 326, 327; Edrington v. Harper, 3 J. J. M., 355; Morris v. Morris, 2 Bibb, 311; Brinkerhoff v. Lansing, 4 Johnson's Ch'y Rep., 76; Perine v. Dunn, *Ibid.*, 141; Baxter v. Willey, 9 Vt., 276; Holmes v. Fresh, 9 Mo., 201; Phoenix v. Gardner, 13 Minn., 430.)

:2. The agreement by which all the notes were to become due and payable upon default in payment of any one, was a binding and valid contract. (Story on Promissory Notes, page 34.)

:3. The lien of supply men, under the act of March 20, 1876, is not superior to a vendor's lien. Moreover, that act does not apply, because this is not an action to settle the estate of a decedent or a trust estate. (Acts 1876, vol. 1, page 114.)

·4. The appellant, by instituting suit and bringing the property into the custody of the court, acquired a lien which can not be overreached by subsequent attachments. (Scott v. McMillan, 1 Litt., 298; Scott v. Coleman, 5 Mon., 73; Watson v. Wilson, 2 Dana, 406; Thomas v. Southard, *Ibid.*, 480; Newdigate v. Lee and Rees, 9 Dana, 20; Burkett v. Stewart, 3 B. M., 115; Newport & Cin. Bridge Co. v. Douglass and Cline, 12 Bush, 789; Edgell v. Hayward, 3 Atk., 356; Milward v. Cochran, 7 B. M., 346.)

.5. As to what constitute fixtures, and the right of the vendor to subject them. (Elwees v. Mawe, 2 Smith's Leading Cases, 228–231; Wallace v. Merchant's Ins. Co., 4 Met. (Mass.), 306; Broome's Maxims, page 425; Thomas v. Grant, 5 Bush, 39–40; Drake on Attachments, page 458; Johnson v. Wiseman, 4 Met., 459; Clore v. Lambert, 78 Ky., 324.)

W. H. MACKOY FOR APPELLEES.

1. The transaction between appellant and Louis Geisbauer was a mortgage, and not a sale. (Jones on Mortgages, vol. 1, sections 241,

244, 245, 246, 248, 258, 263, 264, 266, 331; Honore v. Hutchings,. 8 Bush, 687; Edrington v. Harper, 3 J. J. M., 353; Story's Eq.. Jur., vol. 2, section 1018; Skinner v. Miller, 5 Litt., 86.)

2. As to the personal property, the title of appellant was void as to· creditors and subsequent purchasers, one of the vendors remain-- ing in possession. (Brummell v. Stockton, 3 Dana, 134; Morton v. Ragan & Dickey, 5 Bush, 334; Hunnelly v. Webb, 3 J. J.. Mar., 643; Woodrow v. Davis, 2 B. Mon., 298; Dale v. Arnold,. 2 Bibb, 605; Baylor v. Smither's Heirs, 1 Litt., 106; Daniel v. Holland, 4 J. J. Mar., 22; Middleton v. Carroll, 4 J. J. Mar.,.. 151; Meredith v. Sanders, 2 Bibb, 102; Enders v. Williams, 1 Met., 346; Swigert & Shreve v. Thomas, 7 Dana, 220.)

3. As to what constitute fixtures. (Clore v. Lambert, 78 Ky., 224.)

4. Appellant's proceeding was a *lis pendens* only as to property upon· which it had a lien. The cases cited by appellant's counsel do· not support their claim. (Ross v. Wilson, 7 Bush, 29.)

5. The appointment of a receiver is simply the taking of property into the custody of the court. It does not affect the right or title to property. (Kerr on Receivers, pages 159, 161, 163; Ellicott v. U. S. Ins. Co., 7 Gill, 307; In re Rachel Colvin, 3 Md. Ch'y, 280; Ellicott v. Warford, 4 Md., 80; Receivers v. Gas-light Co., 3 Zab.,. 283; Daniell's Ch'y Pl. and Pr., page 1716, and note 2 to same,. and pages 1740-41; Rowlett v. Eubank, 1 Bush, 477; Johnson v.. Gunter, 6 Bush, 534.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Charles Geisbauer, at the time of his death, was the owner of a large brewery in the city of Covington, including all the realty upon which it was located, and the fixtures and personalty usually belonging to such an establishment. He was largely indebted to the Northern Bank of Kentucky, and other parties, whose debts were finally paid off by money obtained from the bank, in the following manner: The children, or devisees, and the executor of the will of Geisbauer being desirous of having the debts paid, and to prevent a sale of the property, at the instance of creditors applied to the: Northern Bank of Kentucky for a loan of $60,000,.

and proposed to secure this loan by a mortgage on the property.

The bank declined to take a mortgage, as the proof shows, and, by subsequent negotiation, purchased the entire brewery of the widow, heirs, and executor for the sum of $60,000, and obtained an absolute conveyance therefor. The bank, at the time of the purchase, and when it acquired the absolute title, agreed to sell, and did sell, to Louis Geisbauer, a son of the decedent, the same property on a long credit, with the agreement to re-convey to him; and the further agreement that if any of the notes were not paid at maturity, the whole of the purchase money should fall due. Louis Geisbauer failed to pay one of the installments, and a suit was instituted by the bank to enforce the vendor's lien; and, at the instance of the bank, Louis Geisbauer having been in the possession of and running the brewery, and without objection, the entire brewery, with all the fixtures and personalty used about the establishment, and the beer on hand as well as the books, were placed in the hands of a receiver as the property of Louis. The debts of the estate of his father had been paid by the bank, or the money obtained under its purchase, and those debts were no longer in existence. The bank did not propose to run the brewery, but made the purchase to secure its own debt, and then sold it to Louis, on a long credit, for near $80,000. The parties in interest, who were liable for this debt to the extent they received assets from the original debtor, were no longer liable. The executor of the debtor was released by

the bank's purchase from any obligation to pay, and all the creditors of Charles Geisbauer satisfied. These creditors had been paid by the bank, or from the proceeds of the sale. The bank then stood as the vendor, and Louis Geisbauer as the vendee of the property. It was a new obligation, with altogether different parties to it, and must be regarded as a sale and not a mortgage. Whilst it was understood that Louis was to re-purchase the property, which he did in fact do, and obtained the bond of the bank for title, one can not well see how the transaction is to be denominated a mortgage; and, when looking to the testimony on this point, as to the intention of the parties, there is but little room for doubt as to the proper meaning of this transaction between the bank and Louis Geisbauer. But whether a sale or mortgage, the trouble in this case arises in determining the character and extent of the sale to Louis, and the interest he acquired by the purchase.

All he purchased was the real estate on which the brewery stood, with the boundary specifically given. This included the building itself and the fixtures; and, no doubt, as is alleged by the bank, included all the beer, ale, malt liquors, horses and wagons, and personalty used about the establishment. The latter entered into the possession as purchaser, and these appellees furnished him material and supplies, and gave him credit on the faith of the profits in his possession and under his control. How far the lien of the bank extended, is the question involved here. That it had a vendor's lien

is manifest; but that it had a lien by contract or
by operation of law on the personal estate of Louis,.
its vendee, although on the premises, as against cred-·
itors, can not be maintained.

It is argued by counsel for the bank, that because·
the entire brewery was placed in the hands of, and
taken into custody by, the court's receiver, that this,
gave the bank a lien, or rather made it a *lis pen-
dens* against the creditors of Louis.

These creditors, by attachment, levied on this prop-·
erty, or its proceeds, including the property acquired.
by Louis after his purchase, and were made parties,
to the action by the bank, and the cases consoli-
dated.

The proceeding seeking to subject the fund was in.
accordance with the provision of the Code. The in-
stitution of the action by the bank to subject the·
property, including the realty, the personalty, book
accounts, etc., upon the idea that a lien existed, did
not, of itself, create a lien, nor was it such a *lis pen-
dens* as gave the bank a right to subject it to the,
payment of its debts, for no other reason than that
a receiver had been appointed, without objection,
and the property sold. If no lien existed on the per-
sonalty, as between Louis and the bank, the Chan-
cellor, unless the bank had adopted some provisional
remedy, would have ordered the proceeds of the per-
sonalty paid over to the debtor. A fair construction.
of the contract of sale, in the light of the pleadings.
and proof, gave to the bank as between it and Louis.
Geisbauer a lien on all the property, real and per-
sonal, that had been purchased by the bank and sold

to Louis. The personalty was regarded by them as a part of the brewery and indispensable to its use, and such the bank alleges was the intention of the parties. If so, when the bank came to enforce its lien, having brought the property into court, or its proceeds under the sale by the receiver, it was then a *lis pendens* as against these creditors, although without such custody by the court no lien as against them would have existed. As between Louis Geisbauer and the bank a lien did exist, but as to creditors it did not exist, as the lien was not of record, and the possession under the sale was with Louis, the vendee.

Before the creditors, however, assert their claims, the bank has this property or its proceeds in court for the purpose of discharging its lien as against Louis, and this *lis pendens* operated to defeat the claims of the attaching creditors as to this property. Not so as to the property acquired by the vendee after his purchase, except such as should be properly denominated fixtures. There was no lien retained on the after acquired property, or on the accounts and demands due Louis after his purchase. This amounted, as the record shows, to over $6,000, and was directed to be paid by the judgment to the appellees. The appellant, the bank, had no right to subject it. It had no lien on the property or the accounts as between it and Louis, and, therefore, there was no reason why any creditor might not intervene so as to reach the fund in court; that, as between Louis and the bank, the latter had no lien upon or right to subject as the pleadings stand.

The mere attempt to enforce a lien when one does not exist, does not create any priority in point of time as against an attaching creditor who acquires a lien by a levy of his attachment.

If the position of counsel is the correct one, then all provisional remedies could be dispensed with, as the action itself would constitute the lien.

The cases of Scott v. Coleman, 5 Monroe, 73; Watson v. Wilson, 2 Dana, 406; Scott v. McMillen, 1 Littell, 302, can not be made to apply to this case.

It is not necessary that the plaintiff should have a specific lien. He may, by his return of no property, assail a fraudulent conveyance, and the action is a *lis pendens* so far as subsequent attaching creditors are concerned. It creates a lien against all subsequent creditors who are seeking to reach it by provisional remedies; but a mere action to subject that upon which the party has no specific lien, and without any equitable grounds that would authorize the Chancellor to subject it, creates no *lis pendens*.

The fact that the money is in the hands of an officer of the court and is the proceeds of property sold in the action, does not authorize the Chancellor to direct its payment in discharge of the judgment or in its partial discharge. This is not a proceeding to settle up an insolvent estate, nor a trust estate, nor is it a suit for distribution between creditors, but is an action to enforce a vendor's lien; and the question as to priority of right arises as between the vendor and the attaching creditors.

This case is not affected by the act of March 20, 1876, providing for liens on behalf of laboring and

supply men. There is no assignment for the benefit of creditors, but a vendor's lien existing as against creditors. The lien of the supply men is made superior to the lien of *any mortgage or other encumbrance heretofore or hereafter* created, but does not apply to the lien of the vendor of realty.

In the settlement made by the commissioner it appears that the proceeds of the personalty accumulated by the debtor, including the accounts due him, etc., amount to as much as the Chancellor has awarded the appellees, who were the attaching creditors; and, therefore, this judgment will not be disturbed, either on the original or cross-appeal. Nor can we see in what way the bank has been prejudiced by the order of court sustaining the attachments. The bank has no interest in the after-acquired property, and the debtor is not complaining, nor has he controverted the grounds of the attachment.

The judgment is affirmed on both the original and cross-appeal.