CASE 20—PETITION EQUITY—APRIL 7.

# Rothschild's Administrators v. Kohn Brothers & Co.

APPEAL FROM DAVIESS CIRCUIT COURT.

1. ASSIGNMENTS FOR CREDITORS—PURCHASE IN SECRET TRUST FOR DEBTOR—ESTOPPEL. — Where property assigned for the benefit of creditors has, at a sale made by the assignee, been purchased by another in secret trust for the debtor and the purchase money paid by him, the fact that creditors have, in the distribution of the assigned estate, received their *pro rata* of the purchase money, does not estop them from subjecting the property as that of the debtor. And where such property consists of a stock of merchandise it is immaterial that, by reason of purchase and sale, the goods sought to be subjected are not the identical goods obtained from the assignee.

2. RES JUDICATA.—The pretended purchaser of the assigned goods not being a party to the action to settle the assigned estate, it could not be determined in that action whether the purchase was made by him for the debtor's benefit, and, therefore, that question is not *res judicata*, although it was raised by the creditors in their exceptions to the commissioner's report

3. RIGHTS OF SURETY IN CLAIMANT'S BOND.—The pretended purchaser of the goods, which were subsequently levied on as the property of the debtor, having released the levy by the execution of a claimant's bond, he and his surety can not claim that by reason of the fact that they have been made liable on that bond they are entitled to look to the property for indemnity as against other creditors who have intervened

and acquired the right to look to the property for the satisfaction of their claims. The surety in such a case can only look to his principal for indemnity; and the principal in this case can not, under the circumstances, assert an equitable right to look to the property for indemnity, whatever may be the general rule.

4. PRETENDED PURCHASER—RIGHTS AS AGAINST CREDITORS.—The pretended purchaser having allowed his name to be used in carrying out the fraudulent purpose, he must rely upon the debtor to pay accounts due for goods purchased in his name to run the store, and can not claim the right as against creditors to be indemnified out of the proceeds of the goods.

5. LIS PENDENS.—Where a creditor seeks to subject property of the debtor which has been fraudulently transferred, and it is specifically described in the petition, an equitable *lis pendens* lien is created, and one who takes from the transferee a mortgage upon the property pending the action is a *lis pendens* purchaser.

6. SAME.—Under our statute the *lis pendens* begins upon the suing out of the summons, and not upon the service of the summons.

SWEENEY, ELLIS & SWEENEY, FOR APPELLANTS.

1. The assignment from Levy to Baer was not fraudulent, and the title to the goods passed to him and from him to Goldnamer. But if fraudulent there is no sufficient evidence that Goldnamer was cognizant thereof.

2. The question is *res judicata*.

3. The creditors participated in the distribution, and thereby ratified the assignment and sale thereunder.

4. The goods bought from Baer were disposed of before the institution of the present actions, except as to J. M. Robinson & Co. and C. H. Bliss, who exhausted their liens by the levy of their attachment on the old stock, and could have no lien on goods afterward acquired.

5. The after-purchased goods sought to be subjected were bought in the name of Goldnamer and for his own use, except that Levy was to have a share of profits for services, and so the actions failed utterly.

6. But if Goldnamer allowed Levy to use his name for his own use and benefit, he was simply a trustee for Levy, and any debts incurred by him, growing out of the trust, are to be paid out of the trust property.

7. In view of the existence of debts, Levy's creditors could get nothing.

8. If all these points should be decided against Goldnamer, still, if he pays the value of the property levied upon, this would give him a right to retain it, and the court having disposed of it in the course of the action, he had the right to insist upon crediting the proceeds on his bond; and his surety on the claimant's bond had the right to insist upon this.

9. In any view possible, it is a judicial outrage that he should pay for the goods to the persons from whom he originally bought them; that he should again pay for them to Levy's creditors; and that goods thus.

twice paid for, should, nevertheless, be taken away from him and from his surety, and handed over to still other creditors of Levy.

GEO. W. WILLIAMS & SON for appellees.

1. The judgment in the action of Baer, Assignee, v. M. Levy, etc., is not a bar. Goldnamer was not a party to that action and could neither be prejudiced nor benefited thereby, or by any judgment in that action. (Herman on Estoppel, pp. 18, 37.)

2. It was substantially decided in Robinson & Co. v. Levy, &c., that the goods and business held and carried on in Owensboro by Levy, in the name of Goldnamer, were the property of Levy and subject to his debts. And this was, so far, a proceeding *in rem* as that the judgment in that case was conclusive against both Levy and Goldnamer, and other creditors coming into that action and seeking the satisfaction of their debts. (Locke, &c., v. Coleman, 4 Mon., 322.)
   But aside from that adjudication the proof of fraud is overwhelming.

3. Appellants were *lis pendens* purchasers, and their petition discloses the fact. The *lis pendens* begins when the petition is filed and summons issued. (Hall, &c., v. Grogan, &c., 78 Ky., 11; Northern Bank v. Deckeback, 83 Ky., 161'; Hart, &c., v. Hayden, &c., 79 Ky., 346; Child's v. Burton, 6 Bush, 618; Wickliffe v. Breckinridge, 1 Bush, 428; Hawes v. Orr, 10 Bush, 433; Kellar, &c., v. Stanley, &c., 86 Ky., 247; Civil Code, sec. 39.)'

4. If Goldnamer actually participated in the fraudulent arrangement with Levy to shield the goods and business of the latter from his creditors, then he has no legal rights growing out of the transaction which can be asserted or enforced in a court of justice. (Wood v. Goff, 7 Bush, 61; Sheldon on Subrogation, 44.)

5. The surety in the claimant's bond has no right of subrogation to the lien acquired by the levy of the execution. (Sheldon on Subrogation, 115, 127, 113.)
   Section 650 of the Civil Code is for the protection of the plaintiff in the execution, not for a stranger who presents an unfounded claim to the property levied upon.

CHIEF JUSTICE HOLT delivered the opinion of the court.

June 29, 1882, M. Levy made an assignment for the benefit of his creditors to one Baer. The assigned property consisted of a stock of merchandise.

After a small portion of them had been sold at retail by the assignee, the balance were, as is claimed, pretendingly purchased by Jacob Goldnamer as if for himself, but in fact for Levy, and paid for by the latter. They

are brothers-in-law. Levy thenceforth controlled and carried on the business, but in the name of Goldnamer, who was merchandising about a hundred miles distant.

In April, 1883, J. M. Robinson & Co. and C. H. Bliss, having judgments against Levy and returns of *nulla bona*, instituted actions assailing the assignment and purchase by Goldnamer as fraudulent, and averring that the purchase was merely colorable as to Goldnamer, and in fact made for Levy, he furnishing the money to pay for the goods.

They sued out attachments, under which a portion of them were seized, and finally sold under a decree directed to be entered by the Superior Court, it holding that the purchase was fraudulent upon the part of Goldnamer, and made, in fact, for Levy.

The goods so seized did not, however, sell for enough to pay the debts of these two attaching creditors, and the actions remained pending upon the docket.

Goldnamer brought an action for a new trial upon the ground that he had discovered those creditors had, in a suit by the assignee to settle the trust, received their *pro rata* of the trust estate, including what had been paid for the goods bought in his name, and this fact was attempted to be relied on as an estoppel of the claim that the assignment or purchase in Goldnamer's name was fraudulent.

A new trial was, however, refused, and, upon appeal, the judgment was affirmed by the Superior Court.

January 12, 1888, Kohn Bros. & Co., and other creditors of Levy, having obtained judgments and returns of "no property," sued to subject the goods in the store, which was still being conducted by him, but in Gold-

namer's name, claiming that the assignment and purchase by the latter, in 1882, were fraudulent; really for Levy's benefit; that the latter had in fact paid for them, and that all the stock then on hand, in truth, belonged to him. The summons was served on Levy January 14, 1888, but not on Goldnamer until January 19, 1888. No attachment was sued out.

In November previous, Wald & Co. had brought a similar suit upon a return of "no property." They sued out an attachment, but nothing was done under it. Levy and Goldnamer were, however, served with summons within a day or two after the filing of the petition.

They, as well as one other creditor, also sued out executions upon judgments in their favor, which were levied upon the goods.

Goldnamer, with Joseph Rothschild as his surety, executed claimant bonds for them.

Notices were issued in January, but not executed until February, 1888, of motions upon these bonds, and at this stage those motions and all of the suits, including those of Robinson & Co. and Bliss, were, by consent, consolidated.

January 18, 1888, Goldnamer executed a mortgage upon the goods on hand to other creditors, who, on March 10, 1888, tendered a petition in these causes asserting the same, but it was rejected; and the court finally rendered a judgment, holding the obligors in the claimant's bonds liable for the debts as to which they had been executed, and the goods on hand having been sold by a receiver, it ordered the remainder of the debts of Robinson & Co. and Bliss to be paid in full therefrom, and the balance to be distributed *pro rata* to the other plaintiffs, not

including the creditors who had obtained judgment upon the claimant bonds.

It would unnecessarily extend this opinion to detail the testimony in the case, or to consider whether the assignee was a party to any fraudulent purpose. It is sufficient to say that when all the circumstances proven are considered, they are convincing to an unprejudiced mind of fraud upon the part of Levy to which Goldnamer was a party, and that the Superior Court was right in its conclusion upon the appeal in the cases of Robinson & Co. and Bliss. Moreover, the chancellor has, in all these cases, considered the testimony and so found, and his conclusion as to this question of fact is, in our opinion, abundantly supported by the testimony.

The fact that the plaintiffs claimed and received their *pro rata* of the fund in the hands of the assignee in the suit by him to settle the trust, does not estop them from seeking to subject the goods now on hand, although, by reason of purchase and sale, they are not the indentical ones obtained from the assignee.

It is true, that in the action by the assignee to settle the trust, some of the creditors excepted to the commissioner's report upon the ground that the purchase by Goldnamer was a pretended and fraudulent one; but Goldnamer was not a party to that suit, and whether the purchase by him was merely colorable, and, in fact, for Levy's benefit, which is the issue now made, could not have been determined in that action. The fact that the plaintiffs in these proceedings shared in the distribution of the trust fund, including what was paid for the goods purchased in Goldnamer's name, does not create any estoppel, because they are proceeding upon the ground that

the money paid for them was that of Levy; that the goods, therefore, also belonged to him, and that they have a right, therefore, to look to both for the payment of their debts.   The idea is that the goods when purchased belonged to him, and that the business which had been conducted in Goldnamer's name, up to the time it was closed out by the appointment of the receiver in these actions, was in fact that of Levy, and that the goods on hand, although not the identical ones obtained from the assignee, belonged to Levy, and were therefore liable for the debts of the plaintiffs.   The question is not *res judicata.*

It is however said that Goldnamer and his surety in the claimant's bonds have been made liable thereon, and still the goods, or the fund arising from their sale, have, by the judgment, been given to the other plaintiffs.   So far as the surety is concerned, it is sufficient to say, that in such a case he can only look to his principal for indemnity.   No right of subrogation to any creditor's rights exists as to him, and Goldnamer will not, under the circumstances, be heard as to what equitable right, if any, the claimant of property, where he has been made liable and has thus satisfied the debt, has to look to the property for indemnity where other creditors of the debtors have intervened, and acquired the right to look to the property for the satisfaction of their claims.

Goldnamer presents himself as a party to a fraud ; and while he may now be liable for goods which have been purchased in his name to run the store, yet, as he has allowed his name to be thus used in the carrying out of the fraudulent purpose, he must rely upon Levy paying for them and saving him harmless.   He can not upon the

idea that if he was not the real owner of the goods, yet he at least held them in trust for Levy, be indemnified out of the proceeds, because if he can in any view be regarded as a trustee, he was a fraudulent one.

The only other question necessary to be considered is the refusal of the court to allow the mortgagees under the mortgage from Goldnamer, of January 18, 1888, to assert it. It may be said, if the goods were not his then he had no right to mortgage them. But in response to this, it can be properly said that this was a question upon which the mortgagees were entitled to be heard. If, however, the plaintiffs in these suits had, before the execution of the mortgage, acquired a *lis pendens* equitable lien upon the goods, then, as the fund realized from their sale did not satisfy the plaintiffs' claims, this question need not be considered, and the various other reasons given in argument why the petition of the mortgagees to be made parties was properly rejected need not be noticed.

The attachments originally sued out by Robinson & Co. and Bliss were exhausted by the sale of the portion of the goods upon which they were levied. The mere bringing of a suit to subject property to a debt where the plaintiff has no specific lien, will not, in the absence of any grounds authorizing the chancellor to subject it, create a *lis pendens* lien.

But where it is claimed the property has been fraudulently transferred, and it is specifically described in the petition, as it is in this instance, and the chancellor is asked to subject it, an equitable *lis pendens* lien is acquired. Northern Bank of Kentucky v. Deckebach, &c., 83 Ky., 154.

The doctrine of *lis pendens* applies both at law and

in equity.   But for it a court often could not execute its decrees.   Alienation of the property during the pendency of the action would prevent its doing so.   After a suit is begun, it would be contrary to public policy to permit one, though not a party to it, to defeat any judgment by the acquisition of the property.   If allowable, litigation would be unavailing.   The rule is based upon necessity, and liable to work such hardship that it would likely not be in force as to *bona fide* purchasers, but for the publicity of judicial proceedings, which affords opportunity of getting information.   When, however, does this *lis pendens* begin?

Freeman on Judgments, section 195, says:   "*Lis pendens*, except when some statute provides otherwise, begins from the service of the process or subpœna, and not before."

This is the common law rule, and in the absence of any statutory provision the commencement of the *lis pendens* is in general the service of the process.

A *lis pendens* is merely, however, as the term indicates, a pending suit; and section 39 of our Civil Code provides that an action is " commenced " by the filing of the petition and the suing out of the summons.

When this is done the action is by our statute begun. Hart, &c., v. Hayden, &c., 79 Ky., 346.

Whenever an action is " commenced, " according to the statute, it is certainly pending; a party may then by diligence inform himself that the property is in litigation; and it results, that when this mortgage was executed all of the creditors, to whom the judgment gives the proceeds of the goods, had an equitable *lis pendens* lien upon them.   Although the summons in the Kohn Bros. ·

& Co. suit was not executed on Goldnamer until the day after the mortgage was executed, yet the action had, according to our statute, been pending for several days. So far as notice is concerned it did not matter to the mortgagees whether the *lis pendens* dated from the filing of the petition and the suing out of the summons, or from its service. The service upon Goldnamer gave no actual notice to them.

It is sought by a cross-appeal to charge Goldnamer with the money realized by the sale of goods while the store was being conducted by Levy, from 1882 to 1888; but the theory upon which the creditors proceed is that Levy in fact owned the store, and that he, and not Goldnamer, got the proceeds.

The judgment is affirmed upon both the original and cross-appeals.