## Goodin & Barney Coal Company v. Southern Elkhorn Coal Company, et al.

(Decided February 1, 1927.)

(Modified May 17, 1927.)

### Appeal from Floyd Circuit Court.

1. Attachment.—Affidavit for attachment, failing to allege plaintiff's claim was just or to state sum sought to be recovered in accordance with Civil Code of Practice, section 196, and failing to allege defendant had no property within state subject to execution as required by section 194, subd. 11, held insufficient and attachment based thereon properly discharged.

2. Mechanics' Liens.—Under Ky. Stats., section 2463, lien of one building houses on mining property is inferior to vendor's lien thereon, which was duly recorded, since section 2466 has no application.

3. Insurance.—Vendor of property held to have no claim to insurance money collected by purchaser after destruction of house on

property conveyed, where insurance was not for benefit of vendor.

4. Receivers.—Antecedent creditor, without lien and with knowledge of seller's claim on property subsequently purchased by debtor, cannot, complain that such claims were adjudged a priority thereon.

5. Receivers.—Where sellers at judgment sale made separate bid for property on which they claimed a lien, and property was subsequently sold as a whole for greater amount, sellers were entitled to allowance of priority to extent of their bid as against one claiming a lien on all property of debtor by reason of attachment, since assumption is warranted that property brought as much in last sale as in separate sales.

6. Receivers.—Where receiver appointed by court in attachment proceedings while operating property took out indemnity insurance, the insurer's claim for balance due on policy held not entitled to priority, in absence of showing order of court directing receiver to operate it he was without power to take out indemnity insurance.

A. J. MAY, EDWARD L. ALLEN and S. S. WILLIS for appellant.

R. D. DAVIS for Southern Elkhorn Coal Co.

JOSEPH D. HARKINS for R. W. Stone and others.

W. P. MAYO and COMBS & COMBS for Enterprise Foundry & Machine Co.

C. B. WHEELER for J. B. Turner.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming in part and reversing in part.

The Goodin & Barney Coal Company was organized in 1917, and owned a coal lease at Garrett, Ky. On May 1, 1920, it bought from the Beaver Creek Consolidated Coal Company a lease on about 700 acres of land at Boscoe, Floyd county, Ky. It then began mining operations on the lease at Garrett and also on the lease at Boscoe and continued producing coal until April 29, 1922, when it sold its mining plant, leasehold, equipment, and lands to the Southern Elkhorn Coal Company and conveyed same to it in consideration of $92,500; $5,000 of which was paid in cash and notes were executed for the remainder. In the deed a lien was retained for the unpaid purchase money. The deed was duly recorded. It also required a sufficient amount of insurance to be maintained on the property to secure the payment of the deferred purchase money. After the purchase the Southern Elkhorn Coal Company took possession and proceeded to mine and ship coal. It, by contract, had R. W. Stone to build ten

or twelve additional miners' houses on the leasehold at Boscoe. It bought from J. B. Turner a house and lot near its plant for $2,000. Turner made it a deed retaining a lien for the purchase money. It bought from the Enterprise Manufacturing Company of West Virginia a number of mining cars. These cars were shipped to it from West Virginia under a contract in writing by which the title was to remain in the seller until the cars were paid for. It also bought from the Cumberland Iron Works in West Virginia, under a like contract, a number of mining cars. These cars were placed by it in its mines and operated there with its other mining equipment, but the contracts under which they were bought were not then recorded.

The Southern Elkhorn Coal Company having failed to pay the purchase money due the Goodin & Barney Coal Company, the latter brought this action on August 6, 1923, to enforce its lien upon the property. It also sought and obtained a general order of attachment which was delivered to the sheriff on the 8th of August, 1923, and was by him on that day levied on the mining property and equipment. Upon its motion a special receiver was appointed to take charge of the property and sell it, and a judgment was entered for the sale of the property, the court reserving the question of the priority of liens. R. W. Stone, J. B. Turner, the Cumberland Iron Works, the Enterprise Manufacturing Company, which had changed its name to the Enterprise Foundry & Machine Works, and the Integrity Mutual Casualty Company filed their intervening petitions setting up their claims. The cases were finally prepared for judgment. The sale made under the original judgment having been set aside, a new judgment was entered by which the receiver was directed to sell separately each of the pieces of property on which the intervening petitioners claimed a lien and then to sell the property as a whole. On the sale made under this order the Goodin & Barney Coal Company bought the whole property for $62,000. The sale was confirmed by the court. Each of the lien claimants made a bid for the property upon which he claimed a lien, but the aggregate of these bids was less than the bid of Goodin & Barney Coal Company for the whole property. After the sale was confirmed the case was submitted to the court on the question of priority of liens, which had been reserved in the judgment. The court upon hearing adjudged the intervening petitioners to be paid out of the $62,000, the

price of the whole property, before anything was paid to the Goodin & Barney Coal Company. It appeals.

The Goodin & Barney Coal Company had a vendor's lien under its deed on all the property it conveyed thereby to the Southern Elkhorn Coal Company, but it had no lien under the deed on the property which the Southern Elkhorn Coal Company afterwards bought. It claimed a lien on all of this property by reason of its attachment. The intervening creditors entered a motion to discharge this attachment. While this motion was not formally sustained by the circuit court, the effect of its judgment was to discharge it. So the first question in the case is, Was this attachment properly discharged? The grounds of the motion were that the affidavit for the attachment was insufficient. The affidavit is in these words:

"Plaintiff states that the defendant Southern Elkhorn Coal Corporation is heavily involved in debt; that its obligations to the amount of many thousands of dollars are past due and unpaid, and the said personal property of said defendant, or some portion thereof upon which this plaintiff has and holds its lien, has been levied upon by other creditors of the defendant, and is now in the hands of the officers of this court, and that by reason thereof the defendant is uable to meet its obligations, or pay its debts, is insolvent and in rapidly failing circumstances, and the collection of plaintiff's demand herein will be endangered by delay in obtaining judgment, execution, and return of no property found."

It will be observed that this affidavit does not aver that the plaintiff's claim is just or state the sum which the affiant believes the plaintiff ought to recover, as provided by section 196 of the Code. This is essential. Moore v. Harrod, 101 Ky. 248, 40 S. W. 675, 19 Ky. Law Rep. 406. The affidavit was plainly based upon subdivision 2 of section 194 of the Code, which is in these words:

"In an action for the recovery of money due upon a contract, judgment or award, if the defendant have no property in this state subject to execution, or not enough thereof to satisfy the plaintiff's demand, and the collection of the demand will be endangered by delay in obtaining judgment or a return of no property found."

It was not alleged in the affidavit that the defendant had no property in this state subject to execution or not enough thereof to satisfy the plaintiff's demands. All that is alleged in the affidavit may be true and yet this may not be true. The court therefore properly discharged the attachment, as the affidavit was insufficient under the Code. It follows that the plaintiffs have no lien on the property except under the deed.

By section 2463, Ky. Stats., a builder of a house is given a lien on the property, but it is expressly provided that this lien "shall not take precedence of a mortgage or other contract, lien or bona fide conveyance for value without notice, duly recorded or lodged for record according to law." Stone's lien as a builder is therefore inferior to the vendor's lien of the Goodin & Barney Coal Company, which was duly recorded. Northern Bank v. Deckebach, 83 Ky. 154. He claims, however, a right under section 2466, Kentucky Statutes, which is as follows:

> "If the labor be performed or the materials furnished by contract with the lessee of real estate for a term of years, and if, before the expiration of the term by lapse of time the lessee's interest therein shall from any cause, become forfeited to the lessor, or shall be surrendered to him, and if the lessor shall refuse to pay for the same, the person performing the work or furnishing the materials shall have the right to remove the same from the leased premises, if it can be done without material injury to any pervious improvement on said leased premises."

This section has no application here, for the lease under which the Southern Elkhorn Coal Company held has not been forfeited. The property it still being operated under it. The section only applies where the lessee for whom the work is done had lost his right to hold the property. That is not this case. The property has simply been sold for the debt of the lessee. The circuit court therefore erred in adjudging Stone priority and in not dismissing his petition.

J. B. Turner rests his claim upon the following facts: The house on the lot which Turner conveyed burned down. The Southern Elkhorn Coal Company collected from the insurance company $2,400, and he sought to show that after collecting this money it made a payment to the Goodin & Barney Coal Company, but that is im-

material. The insurance was not for his benefit. He had no claim to the insurance money when the Southern Elkhorn Coal Company collected it. The money belonged to it. He had no lien on it or right in it, and what it did with this money is immaterial to him. 14 R. C. L. section 536, p. 1367; 26 C. J. 437, 438; Henry Vogt Mach. Co. v. Lingenfelser, 99 S. W. 358, 30 Ky. Law Rep. 654.

The circuit court therefore erred in adjudging Turner priority and should have dismissed his petition as to this insurance fund.

The claims of the Enterprise Manufacturing Company and the Cumberland Iron Works may be considered together, as the contracts were very similar. It is insisted for the appellant that these companies have no lien because the property is not sufficiently described in the written contract. The rule on the subject is thus well stated in 11 C. J. p. 456:

> "While the courts recognize well-established principles for determining the sufficiency of the description of the property, they also recognize the impossibility of fixing inflexible rules therefor. Further, the rules generally applicable to chattel mortgages as to description are less rigid than those applied to conveyances of realty.

> "As between the parties a description of the property mortgaged is sufficient if it so identifies the chattels that the mortgagee may say, with a reasonable degree of certainty, what property is subject to his lien, and a specific description is unnecessary in cases not involving the rights of strangers, without notice. Furthermore a description that is not sufficient to make the mortgage valid as against a bona-fide purchaser without notice, or against an attaching creditor, may nevertheless be sufficient as between the mortgagee and a trespasser or a stranger to the title."

These cars are so described that, as between the parties to the contract, they may be identified. The receiver identified them and sold them separately. The Goodin & Barney Coal Company is an antecedent creditor. It had no lien on the property; it had notice of these claims. While the record does not show that it knew the actual amount of the claims, it does show that the plaintiff had notice that there was a claim on the property.

This is apparent from the plaintiff's petition as well as from the subsequent part of the record. Being an antecedent creditor and having acquired no lien upon the property, the Goodin & Barney Coal Company cannot complain that these claims were adjudged a priority. Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833; Larimore & Perkins v. Perkinson, 208 Ky. 382, 271 S. W. 69.

These creditors each made a bid for the cars sold by them when the property was sold separately, but when the property was sold as a whole appellant made a bid for the whole property that was larger than the sum of the separate bids. The circuit court allowed each of the car companies a priority to the extent of its bid for its cars. It is hard to see how appellant is prejudiced by this, for the bid for the whole property, which is accepted, being larger than the sum of the separate bids, it cannot be presumed that the cars in the sale of the whole property brought less than in the separate sales. The car companies do not complain, and no substantial injury was done appellant. The assumption was warranted that the cars brought as much in the last sale as in the separate sales, when the amount bid in the last sale was larger than the sum of the separate sales.

The claim of the Integrity Mutual Casualty Company arises in this way: Under the conveyance made by the Goodin & Barney Coal Company, the Southern Elkhorn Coal Company was required to keep the property insured. The receiver, while operating the property, took out indemnity insurance under the workmen's Compensation Act (Laws 1914, c. 73) with the Integrity Mutual Casualty Company, at a cost of $1,578.03, on which he paid $1,000, leaving a balance due of $578.03. The company filed its intervening petition alleging that by the orders of the court, duly entered in this action on motion of appellant, the receiver was duly directed to operate the coal mine, and while so operating he had taken out the insurance, for which he agreed to pay $1,578.03, and had only paid $1,000. It prayed that the balance due it be ordered paid, together with the other unpaid cost in the action. The transcript before the court is certified as a complete transcript. It contains no order of the court directing the receiver to operate the mine. It only contains orders directing him to sell the property. Without authority to operate the mine, the receiver was without power to take out insurance under the Workmen's Compensation Act, and the property sold is in no

way liable therefor. If there was such an order, a different question would be presented.

The judgment in favor of the Enterprise Foundry and Machine Works and the Cumberland Iron Works is affirmed. The judgment in favor of R. W. Stone, J. B. Turner, and the Integrity Casualty Company is reversed for further proceedings consistent herewith.